Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN WARREN,<br><br>                              Plaintiff,<br><br>             vs.<br><br>MERIDIAN BIOSCIENCE, INC., JOHN C. MCILWRAITH, JAMES M. ANDERSON, ANTHONY P. BIHL III, DWIGHT E. ELLINGWOOD, JACK KENNY, JOHN M. RICE, CATHERINE A. SAZDANOFF, and FELICIA WILLIAMS,<br><br>                              Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1)  Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2)  Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Justin Warren ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Meridian Bioscience, Inc. ("Meridian" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a

result of Defendants' efforts to sell the Company to a consortium of investors consisting of SD Biosensor, Inc. ("SD Bio") and SJL Partners, LLC ("SJL"), through subsidiary Columbus Holding Company ("Parent") and merger vehicle Madeira Acquisition Corp. ("Merger Sub" and collectively with Parent, SD Bio, and SJL, "Consortium") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a July 7, 2022, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Meridian's common stock will be converted into the right to receive $34.00 in cash, without interest.

3.      Thereafter, on August 25, 2022, Meridian filed a Preliminary Proxy Statement on Form PREM14A attaching the proxy statement (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement in an effort to Plaintiff, to vote in favor of the Proposed

Transaction.  The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Meridian, provided by Meridian management to the Board and the Board's financial advisor Rothschild & Co US Inc. ("Rothschild") and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Rothschild, if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Meridian stockholder.

8.     Defendant Meridian is a life science company, develops, manufactures, distributes, and sells diagnostic test kits primarily for gastrointestinal and respiratory infectious diseases, and elevated blood lead levels worldwide. Meridian is incorporated in Delaware and has its principal place of business at 3471 River Hills Dr., Cincinnati, Ohio 45244.  Shares of Meridian common stock are traded on the NasdaqGS Stock Exchange under the symbol "VIVO".

9.     Defendant John C. McIlwraith ("McIlwraith") has been a Director of the Company at all relevant times.  In addition, McIlwraith serves as the Chairman of the Board.

10.     Defendant James M. Anderson ("Anderson") has been a director of the Company at all relevant times.

11. Defendant Anthony P. Bihl III ("Bihl") has been a director of the Company at all relevant times.

12. Defendant Dwight E. Ellingwood ("Ellingwood") has been a director of the Company at all relevant times.

13. Defendant Jack Kenny ("Kenny") has been a director of the Company at all relevant times. In addition, Kenny serves as the Chief Executive Officer ("CEO") of the Company.

14. Defendant John M. Rice ("Rice") has been a director of the Company at all relevant times.

15. Defendant Catherine A. Sazdanoff ("Sazdanoff") has been a director of the Company at all relevant times.

16. Defendant Felicia Williams ("Williams") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18. The Consortium consists of two investors. Non-Party SD Bio is a global bio-diagnostic company with innovative technologies and know-how, providing a broad range of in vitro diagnostic products focusing on all major disease areas. Non-Party SJL operates as a private equity investment company. SJL invests in real estate industry, individual private property, stock industry, and other related industries. SJL Partners PEF provides services in Korea.

19. Non-Parties Parent and Merger Sub wholly owned subsidiaries of the Consortium created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NasdaqGS Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23.     Meridian Bioscience, Inc. is a life science company, develops, manufactures, distributes, and sells diagnostic test kits primarily for gastrointestinal and respiratory infectious diseases, and elevated blood lead levels worldwide. The company operates through Diagnostics and Life Science segments. The Diagnostics segment offers testing platforms, including real-time PCR amplification under the Revogene brand; isothermal DNA amplification under the Alethia brand; lateral flow immunoassay using fluorescent chemistry under the Curian brand; rapid

immunoassay under the ImmunoCard and ImmunoCard STAT! brands; enzyme-linked immunoassays under the PREMIER brand; anodic stripping voltammetry under the LeadCare brands; and urea breath testing for H. pylori under the BreathID and BreathTek brand. This segment also offers respiratory illness assays, such as tests Group A strep, mycoplasma pneumonia, influenza, and pertussis; and blood chemistry products for LeadCare test kits for the detection of lead in blood. It sells products through direct sales force and independent distributors to acute care hospitals, reference laboratories, outpatient clinics, and physician office laboratories. The Life Science segment offers bulk antigens, antibodies, PCR/qPCR reagents, nucleotides, and bioresearch reagents used by in vitro diagnostic manufacturers, as well as researchers in immunological and molecular tests for human, animal, plant, and environmental applications. Meridian Bioscience, Inc. was incorporated in 1976 and is headquartered in Cincinnati, Ohio.

24.    The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated impressive financial success.  For example, in the May 6, 2022 press release announcing its 2022 Q2 financial results, the Company highlighted consolidated net revenues totaling $111.2 million, the highest in Company history, with both segments ahead of expectation.

25.    Speaking on the positive results, CEO Defendant Kenny said, "Meridian delivered another strong quarter.  For the first time since before the COVID-19 pandemic, both the Diagnostics and Life Science segments outperformed, each posting record quarterly net revenues. This is another sign in the continued progress we are making in building a stronger Meridian."

26.    The sustained financial success and impressive results are not an anomaly, but rather, are indicative of a trend of continued future potential success by Meridian.  Clearly, based upon the positive outlook, the Company is likely to have tremendous future success. Despite this

upward trajectory, the Individual Defendants have caused Meridian to enter into the Proposed

Transaction without providing requisite information to Meridian stockholders such as Plaintiff.

***The Flawed Sales Process***

27.     As detailed in the Preliminary Proxy Statement, the process deployed by the

Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the

Individual Defendants and was designed with only one concern in mind – to effectuate a sale of

the Company by any means possible.

28.     Notably, while the Preliminary Proxy Statement discloses that a "Special

Committee" was formed to oversee and evaluate the Proposed Transaction, it fails to disclose what

powers the committee had in doing so, including whether the committee had the power to veto a

transaction that is not in the best interest of common shareholders.

29.     To compound this issue, the Special Committee was formed after significant

negotiations on the transaction had already occurred. Without disclosure of the powers and extent

of ability to influence the structure of a potential transaction, common stockholders such as

plaintiff are led to question the purpose of the Special Committee entirely.

30.     Additionally, the Preliminary Proxy Statement is silent as to the nature of the

confidentiality agreement entered into between the Company and the Consortium, whether this

agreement differed from any other agreement with potentially interested third parties not

specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including

all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions

contained therein, including, all specific conditions, if any, under which such provisions would

fall away.

31.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

32.     On July 7, 2022, Meridian and the Consortium issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CINCINNATI and SEOUL, South Korea, July 7, 2022 /PRNewswire/** -- Meridian Bioscience, Inc. ("Meridian" or the "Company") (NASDAQ: VIVO), a leading global provider of diagnostic testing solutions and life science raw materials, and SD Biosensor, Inc. ("SDB") (KOSE: A137310) and SJL Partners LLC ("SJL") (collectively, the "Consortium") announced today that they have entered into a definitive merger agreement whereby a newly formed affiliate vehicle of the Consortium will acquire Meridian in an all-cash transaction valued at approximately $1.53 billion.
>
> Under the terms of the agreement, Meridian shareholders will receive $34.00 per share in cash, which represents a premium of approximately 32% over Meridian's closing stock price on the day before the Consortium's first offer before the market open on March 18, 2022 (closing price on March 17, 2022 was $25.67) and a premium of 16% based on the one-month average price per share of common stock commencing June 7, 2022.
>
> John C. McIlwraith, Meridian's Chairman, said, "This announcement follows an extensive and deliberate review of Meridian's growth and value creation opportunities in the context of the broader macroeconomic and industry environment. In consultation with external financial advisors and following outreach to potential strategic and financial partners, the Board unanimously agreed that this transaction represents the best path forward for Meridian shareholders, providing them with immediate, compelling and certain value, while enabling the Company to benefit from SDB's and SJL's capital support, expertise and experience."
>
> "We are excited to announce this new chapter for Meridian after the many years spent transforming the Company for sustainable growth," commented Jack Kenny, Meridian's Chief Executive Officer. "In addition to delivering immediate and significant value to our shareholders, we believe the transaction will enhance our ability to serve customers as we navigate the decline in COVID-19 testing demand and develop new products with the benefit of SDB's industry expertise and complementary offerings. Current and prospective employees around the world will also benefit from an even stronger Meridian supported by SDB's and SJL's financial backing and experience. I look forward to working with SDB and SJL and

the rest of our Meridian team to build long-term strength and drive further growth in the diagnostics space."

Dr. Young Shik Cho, Chairman of SDB, representing the Consortium said, "We are pleased to be a family with Meridian Bioscience as a great partner for accelerating our entry into the U.S. IVD market. I believe that SD Biosensor's R&D capabilities and mass production know-how, Meridian Bioscience's U.S. distribution network and expertise in the regulated U.S. market, and SJL Partners' strong management expertise will enable compelling synergies."

Steve Sukjung Lim, Chairman and Managing Partner of SJL, said, "We are eager to begin this partnership with the Meridian team. The combination of Meridian's product commercialization team with deep expertise in the regulated U.S. market, SDB's broad product portfolio and scale manufacturing expertise, and SJL's execution experience and partnership model will further position the Company for long-term success."

**TRANSACTION DETAILS**

Completion of the transaction is not contingent on any financing condition. SDB, which is obligated to ensure that the Consortium funds the acquisition, will do so, together with SJL, through a combination of cash on hand and additional financing capacity, leveraging its strong balance sheet. Under the terms of the merger agreement, which has been unanimously approved by the boards of directors of Meridian and SDB, and the investment committee of SJL, the newly formed vehicle will acquire 100% of the outstanding shares of the Company. The transaction is subject to approval by Meridian shareholders, receipt of required regulatory approvals, the absence of specified materially adverse outcomes of Meridian's previously disclosed and ongoing investigation by the U.S. Department of Justice, and other customary closing conditions. The transaction is expected to close in the fourth calendar quarter of 2022. Upon completion of the transaction, it is expected that SDB will own approximately 60% and SJL will own approximately 40% of Meridian. Meridian will no longer be traded or listed on any public securities exchange.

The Consortium intends to operate Meridian as an independent entity following the completion of the transaction and the Company's leadership team and headquarters are expected to remain in place.

*Potential Conflicts of Interest*

33.     The breakdown of the benefits of the deal indicate that Meridian insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have

secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Meridian.

34.    Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  Notably, while the Preliminary Proxy Statement provides the following information, it fails to account for the cash consideration which such shares will be exchanged for:

| Common Stock Beneficially Owned | | |
|---|---|---|
| | Number of Shares Beneficially Owned | Percent of Class |
| **Shareholders** | | |
| BlackRock, Inc. | 7,405,925 | 16.93% |
| The Vanguard Group, Inc. | 4,876,942 | 11.15% |
| Impactive Capital LP | 4,321,969 | 9.88% |
| Royce & Associates, LP | 2,195,634 | 5.02% |
| **Directors and Named Executive Officers** | | |
| Jack Kenny | 218,692 | * |
| Andrew S. Kitzmiller | 4,028 | * |
| Bryan T. Baldasare | 61,192 | * |
| Lourdes G. Weltzien | 53,552 | * |
| Tony Serafini-Lamanna | 16,468 | * |
| James M. Anderson | 111,453 | * |
| Anthony P. Bihl | 22,787 | * |
| Dwight E. Ellingwood | 91,519 | * |
| John C. McIlwraith | 89,453 | * |
| John M. Rice | 50,973 | * |
| Catherine A. Sazdanoff | 86,153 | * |
| Felicia Williams | 51,003 | * |
| All directors and executive officers as a group (12 persons) | 832,849 | 1.88% |

35.    Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.  The Preliminary Proxy Statement accounts for these awards as follows:

| Name | Number of Shares Underlying Unexercised Options (#) | | Value of Unexercised Options ($) |
|---|---|---|---|
| **Named Executive Officers** | | | |
| Jack Kenny | 232,514 | $ | 4,128,848 |
| Andrew S. Kitzmiller | 5,000 | $ | 46,300 |
| Lourdes G. Weltzien | 36,276 | $ | 556,986 |
| Tony Serafini-Lamanna | 37,776 | $ | 666,456 |
| Bryan T. Baldasare | 11,669 | $ | 176,435 |
| **Other Executive Officers** | | | |
| Julie Smith | 2,000 | $ | 54,060 |
| **Non-Employee Directors** | | | |
| John C. McIlwraith | 76,397 | $ | 1,392,681 |
| James M. Anderson | 95,397 | $ | 1,627,436 |
| Anthony P. Bihl III | 16,047 | $ | 196,451 |
| Dwight (Dee) E. Ellingwood | 82,897 | $ | 1,483,241 |
| John M. Rice | 32,192 | $ | 510,646 |
| Catherine A. Sazdanoff | 78,397 | $ | 1,435,081 |
| Felicia Williams | 49,397 | $ | 928,251 |
| David C. Phillips | 89,741 | $ | 1,552,49 |

| Name | Number of Restricted Share Units (#) | | Value of Restricted Share Units ($) |
|---|---|---|---|
| **Named Executive Officers** | | | |
| Jack Kenny | 211,983 | $ | 7,207,422 |
| Andrew S. Kitzmiller | 7,500 | $ | 255,000 |
| Lourdes G. Weltzien | 41,996 | $ | 1,427,864 |
| Tony Serafini-Lamanna | 34,936 | $ | 1,187,824 |
| Bryan T. Baldasare | — | | — |
| **Other Executive Officers** | | | |
| Julie Smith | 23,068 | $ | 784,312 |
| **Non-Employee Directors** | | | |
| John C. McIlwraith | 3,012 | $ | 102,408 |
| James M. Anderson | 3,012 | $ | 102,408 |
| Anthony P. Bihl III | 3,012 | $ | 102,408 |
| Dwight (Dee) E. Ellingwood | 3,012 | $ | 102,408 |
| John M. Rice | 3,012 | $ | 102,408 |
| Catherine A. Sazdanoff | 3,012 | $ | 102,408 |
| Felicia Williams | 3,012 | $ | 102,408 |
| David C. Phillips | — | | — |

| Name | Number of Performance Share Units (Target Level) (#) | Value of Performance Share Units ($) |
|---|---|---|
| **Named Executive Officers** | | |
| Jack Kenny | 47,060 | $ 1,600,040 |
| Andrew S. Kitzmiller | 7,945 | $ 270,130 |
| Lourdes G. Weltzien | 7,945 | $ 270,130 |
| Tony Serafini-Lamanna | 7,945 | $ 270,130 |
| Bryan T. Baldasare | — | $ — |
| **Other Executive Officers** | | |
| Julie Smith | 2,648 | $ 90,032 |

36.     In addition, certain employment agreements with certain Meridian executives,

entitle such executives to severance packages should their employment be terminated under certain

circumstances.  These 'golden parachute' packages are significant, and will grant several directors

or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be

paid out as follows:

### Golden Parachute Compensation

| Named Executive Officer | Cash ($) | Equity ($) | Perquisites/ Benefits ($) | Tax Reimbursements ($) | Other ($) | Total ($) |
|---|---|---|---|---|---|---|
| Jack Kenny<br>*Chief Executive Officer* | $2,795,417 | $12,936,310 | $ 52,689 | — | — | $15,784,416 |
| Andrew S. Kitzmiller<br>*Chief Financial Officer* | $1,197,252 | $ 571,430 | $ 26,621 | — | $150,000 | $ 1,945,303 |
| Lourdes G. Weltzien<br>*Executive Vice President, Life Science* | $1,263,850 | $ 2,254,980 | $ 37,366 | — | — | $ 3,556,196 |
| Tony Serafini-Lamanna<br>*Executive Vice President, Diagnostics* | $1,213,369 | $ 2,124,410 | $ 41,803 | — | — | $ 3,379,582 |
| Bryan T. Baldasare<br>*Former Executive Vice President, Chief Financial Officer and Secretary* | — | $ 176,435 | — | — | — | $ 176,435 |

37.     The Preliminary Proxy Statement also fails to adequately disclose communications

regarding post-transaction employment during the negotiation of the underlying transaction must

be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

38.     Thus, while the Proposed Transaction is not in the best interests of Meridian, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

**The Materially Misleading and/or Incomplete Preliminary Proxy Statement**

39.     On August 25, 2022, the Meridian Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

_Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction_

40.     Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

   a.  Adequate disclosure of the powers of the Special Committee in evaluating the Proposed Transaction;

   b.  Adequate disclosure as to why the Special Committee was not formed until significant negotiations with the Consortium had already occurred;

c.   Whether the confidentiality agreements entered into by the Company with the Consortium differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

d.   All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including the Consortium, would fall away; and

e.   Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Meridian's Financial Projections*

41.   The Preliminary Proxy Statement fails to provide material information concerning financial projections for Meridian provided by Meridian management to the Board and Rothschild and relied upon by Rothschild in its analyses.   The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

42.   Notably the Preliminary Proxy Statement reveals that as part of its analyses, Rothschild reviewed, "certain internal financial and operating information with respect to the business, operations and prospects of the Company" prepared by Company management.

43.   The Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Meridian management provided to the Board, Rothschild, and Rothschild.   Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount

rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

44.     With regard to the *Preliminary Meridian projections* prepared by Meridian, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest, taxes, depreciation and amortization, expense of stock-based compensation.

45.     With regard to the *Updated Meridian projections* prepared by Meridian, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a.  Adjusted EBITDA, as well as any underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: interest, taxes, depreciation and amortization, expense of stock-based compensation.

46.     With regard to the *June projections* prepared by Meridian, the Preliminary Proxy Statement fails to disclose material line items, including the following:

    a.  The projected tax rate as well as the net taxes projected to be paid; and

    b.  A definition for Unlevered Free Cash Flow, as well as all underlying inputs, metrics, and assumptions used to calculate the metric.

47.     The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48.     This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this

information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

49.     Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of the Rothschild's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction.   As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Rothschild*

50.     In the Preliminary Proxy Statement, Rothschild describes its fairness opinion and the various valuation analyses performed to render such opinion.   However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.   Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

51.     With respect to the *Selected Public Companies Analysis*, the Preliminary Proxy Statement fails to disclose:

    a.   The inputs, metrics, and assumptions necessary to determine an illustrative range of EV/ Revenue of 2.25x to 3.75x for year 2022;

    b.   The inputs, metrics, and assumptions necessary to determine a EV/Revenue multiple range of 2.75x to 3.75x for year 2023;

    c.   The inputs, metrics, and assumptions necessary to determine an illustrative range of EV/EBITDA of 11.0x to 13.5x for year 2022; and

    d.   The inputs, metrics, and assumptions necessary to determine a multiple range

of EV/EBITDA of 11.5x to 14.0x for year 2023.

52.     With respect to the *Selected Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose:

   a.   The value of each transaction compared;

   b.   The specific date on which each transaction closed; and

   c.   The inputs, metrics, and assumptions used to determine an illustrative range of EV/LTM Revenue of 3.5x to 4.5x for the period ended September 30, 2022;

   d.   The inputs, metrics, and assumptions used to determine illustrative range of EV/LTM EBITDA of 13.5x to 15.5x for the period ended September 30, 2022;

   e.   The inputs, metrics, and assumptions used to determine an illustrative range of EV/NTM Revenue of 3.5x to 4.5x to the estimated NTM Revenue of Meridian for the period ended September 30, 2023;

   f.   The inputs, metrics, and assumptions used to determine an illustrative range of EV/NTM EBITDA of 12.0x to 14.5x to the estimated NTM EBITDA of Meridian for the period ended September 30, 2023;

   g.   The number of fully diluted outstanding shares of Company Stock;

   h.   The range of implied equity values calculated;

   i.   Meridian's net debt;

   j.   The value of government grants issued to the Company;

   k.   The value of other debt-like items as applied to this analysis; and

   l.   The value of cash and cash equivalents as of May 31, 2022.

53.     With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose:

a.   The implied terminal value of the Company;

b.   The inputs, metrics, and assumptions used to determine illustrative range of growth rates in perpetuity of 2.25% to 3.25%;

c.   The range of estimated terminal values calculated;

d.   The inputs used for Depreciation and amortization;

e.   The Company's capital expenditures;

f.    The Company's change in net working capital;

g.   The inputs, metrics, and assumptions used to determine illustrative discount rates of 9.5% to 11.0%;

h.   The inputs, metrics, and assumptions used to determine a weighted average cost of capital of 10.25%; and

i.   The inputs, metrics, and assumptions used to determine a weighted average cost of capital of 10.25% for the Company.

54.   With respect to the *Other Factors*, the Preliminary Proxy Statement fails to disclose the following:

a.   The specific cash consideration transactions compared for purposes of the premiums paid analysis;

b.   The date on which each transaction compared closed;

c.   The value of each transaction compared; and

d.   The inputs, metrics, and assumptions used to determine a range of implied prices of $34.30 to $44.50 per share of Meridian common stock.

55.   These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

56.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder.  Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Meridian stockholder.  As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

### FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

57.     Plaintiff repeats all previous allegations as if set forth in full herein.

58.     Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

59.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

60.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

61.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

62.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

63.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

64.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

<u>**(Against all Individual Defendants)**</u>

65.     Plaintiff repeats all previous allegations as if set forth in full herein.

66.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

67.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

68.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Meridian's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information

available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

69.     The Individual Defendants acted as controlling persons of Meridian within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Meridian to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Meridian and all of its employees.  As alleged above, Meridian is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.     Directing the Individual Defendants to comply with the Exchange Act and to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 9, 2022

BRODSKY & SMITH

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY 11501
Phone: (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*